IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 15 2013

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

| | |
|---|---|
| TINA STANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 4:13cv 20 BRW |
| SOUTHERN SERVICE SYSTEMS, | ) |
| INC., d/b/a SOUTHERN COLLECTION | ) |
| SYSTEM and STEPHEN COBB, | ) This case assigned to District Judge Wilson |
| | ) and to Magistrate Judge Volpe |
| Defendants. | ) |

## COMPLAINT

NOW COMES the Plaintiff, TINA STANE, by and through her attorneys, SMITHMARCO, P.C., and for her Complaint against the Defendants, SOUTHERN SERVICE SYSTEMS, INC., d/b/a SOUTHERN COLLECTION SYSTEM and STEPHEN COBB, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair OMC Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. TINA STANE, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Conway, County of Faulkner, State of Arkansas.

1

5. Defendants were attempting to collect at least two (2) debts allegedly owed by Plaintiff.

6. One such debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Open MRI of Conway, LLC (hereinafter, "the OMC Debt").

7. The OMC Debt was for a medical bill allegedly incurred by Plaintiff.

8. Another such debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Chenal MRI (hereinafter, "the Chenal Debt").

9. The Chenal Debt was for a medical bill allegedly incurred by Plaintiff.

10. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

11. SOUTHERN SERVICE SYSTEMS, INC., d/b/a SOUTHERN COLLECTION SYSTEM, (hereinafter, "SCS") is a business entity engaged in the collection of debt within the State of Arkansas. SCS is incorporated in the State of Arkansas.

12. The principal purpose of SCS' business is the collection of debts allegedly owed to third parties.

13. SCS regularly collects, or attempts to collect, debts allegedly owed to third parties.

14. During the course of its efforts to collect debts allegedly owed to third parties, SCS sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

15. At all relevant times, SCS acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

16. At all relevant times, SCS acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

17. Defendant, STEPHEN COBB, (hereinafter "Cobb") is an individual who was at all relevant times residing in the State of Arkansas.

18. The principal purpose of Cobb's business is the collection of debts allegedly owed to third parties.

19. Cobb regularly collects, or attempts to collect, debts allegedly owed to third parties.

20. During the course of its efforts to collect debts allegedly owed to third parties, Cobb sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

21. As such, at all relevant times, Cobb acted as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

22. At all relevant times, Cobb acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

### FACTS COMMON TO ALL COUNTS

23. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

24. Plaintiff allegedly incurred the Chenal Debt prior to March 15, 2012.

25. On or about March 15, 2012, a lawsuit was filed against Plaintiff in the Sherwood District Court, State of Arkansas, captioned as *Chenal MRI v. Tina Stane*, with case number 2012 0725 (hereinafter, "The Chenal MRI Lawsuit").

26. The Chenal MRI Lawsuit was filed against Plaintiff in an attempt to collect the Chenal Debt.

27. Cobb represents Chenal MRI in the Chenal MRI Lawsuit.

28. At the time the Chenal MRI Lawsuit was filed against Plaintiff, Cobb attached to the Chenal MRI Lawsuit an Affidavit signed by a duly authorized representative of SCS stating Plaintiff owed $149.77 relative to the Chenal Debt.

29. At the time the Chenal MRI Lawsuit was filed against Plaintiff, Cobb also sought to collect from Plaintiff interest, costs and attorneys' fees incurred in filing the Chenal MRI Lawsuit.

30. On or about April 30, 2012, a default judgment was entered against Plaintiff in the Chenal MRI Lawsuit for $149.77.

31. On or about April 30, 2012, the default judgment entered against Plaintiff in the Chenal MRI Lawsuit also allowed for the recovery of $60.00 for attorney's fees and $120.00 for court costs.

32. On or about April 30, 2012, the default judgment entered against Plaintiff in the Chenal MRI Lawsuit also allowed for the recovery of interest from the date of judgment at the rate of ten percent (10%) per annum.

33. On or about June 8, 2012, Cobb sent a Writ of Garnishment to Plaintiff's employer relative to the Chenal Debt.

34. In the Writ of Garnishment sent by Cobb to Plaintiff's employer, Cobb sought to garnish a total of $345.77 relative to the Chenal Debt consisting of the following:

    a. Balance of judgment in the amount of $149.77;

    b. Accrued Interest in the amount of $0.00;

    c. Accrued Court Costs in the amount of $120.00;

    d. Attorneys' Fees in the amount of $60.00;

    e. Cost of Writ in the amount of $10.00; and,

    f. Cost of Service/Certified Mail fee in the amount of $6.00.

35. On or about June 1, 2012, Plaintiff sent a payment of $20.00 to Chenal MRI relative to the Chenal Debt.

36. The aforesaid $20.00 payment Plaintiff sent to Chenal MRI was accepted.

37. Cobb acknowledged to Plaintiff that the $20.00 payment she sent to Chenal MRI was accepted and applied towards the balance of the Chenal Debt.

38. As a result of Plaintiff having made a $20.00 payment towards the Chenal Debt, the balance of the Chenal Debt allegedly owed by Plaintiff should have decreased from $149.77 to $129.77.

39. As a result of Plaintiff having made a $20.00 payment towards the Chenal Debt, Plaintiff only allegedly owed a total of $325.77 relative to the default judgment entered against her in the Chenal MRI Lawsuit, plus interest.

40. On or about June 29, 2012, Cobb garnished $273.13 from Plaintiff's wages relative to the Chenal Debt.

41. Subsequent to June 29, 2012, as a result of Plaintiff having made a $20.00 payment relative to the Chenal Debt and as a result of Cobb having garnished $273.13 from

Plaintiff's wages, Plaintiff only allegedly owed a remainder of $52.64, plus interest relative to the Chenal Debt.

42. On or about July 13, 2012, Cobb garnished $72.64 from Plaintiff's wages relative to the Chenal Debt.

43. Upon information and belief, on or about July 13, 2012, the interest accruing relative to the Chenal Debt was less than $20.00.

44. On or about July 13, 2012, at the time Cobb garnished $72.64 from Plaintiff's wages relative to the Chenal Debt, Plaintiff allegedly owed less than $72.64, relative to the Chenal Debt, inclusive of interest.

45. Upon information and belief, on or about July 13, 2012, Cobb garnished from Plaintiff's wages more funds than Plaintiff allegedly owed relative to the Chenal Debt.

46. Plaintiff never provided Cobb with consent to take more funds from her wages than she allegedly owed relative to the Chenal Debt.

47. Cobb accepted from Plaintiff funds relative to the Chenal Debt in an amount higher than was allegedly owed by Plaintiff relative to the Chenal Debt.

48. Subsequent to Cobb having garnished the aforesaid funds relative to the Chenal Debt, Cobb did not send a refund to Plaintiff.

49. Subsequent to Cobb having garnished the aforesaid funds relative to the Chenal Debt, Cobb did not inform Plaintiff that it had withdrawn more funds from her wages then she allegedly owed.

50. On or about July 17, 2012, Plaintiff sent a correspondence to Cobb.

51. In the correspondence Plaintiff sent to Cobb, dated July 17, 2012, Plaintiff informed Cobb that it had taken more funds than she allegedly owed relative to the Chenal Debt.

52. Plaintiff further requested that Cobb refund the excess funds it had taken from her.

53. Cobb did not refund to Plaintiff the excess funds it had garnished relative to the Chenal Debt.

54. Upon information and belief, in or around July 2012, Cobb applied the excess funds that it had garnished from Plaintiff's wages towards another debt Plaintiff allegedly owed, i.e. the OMC Debt.

55. Upon information and belief, in or around July 2012, Cobb applied funds on Plaintiff's behalf towards the OMC Debt.

56. Plaintiff never provided Cobb with her consent to have Cobb apply the excess funds from the Chenal Debt towards the OMC Debt.

57. Plaintiff never provided Cobb with her authority to have Cobb apply the excess funds from the Chenal Debt towards the OMC Debt.

58. At no time prior to Cobb having applied the excess funds from the Chenal Debt towards the OMC Debt did Cobb ever inform Plaintiff she owed the OMC Debt.

59. At no time prior to Cobb having applied the excess funds from the Chenal Debt towards the OMC Debt did Cobb ever obtain permission from Plaintiff to apply the funds on her behalf towards the OMC Debt.

60. At no time prior to Cobb having applied the excess funds from the Chenal Debt towards the OMC Debt did Cobb ever obtain authorization from Plaintiff to apply the funds on her behalf towards the OMC Debt.

61. At no time prior to Cobb having applied the excess funds towards the OMC Debt, was a lawsuit filed against Plaintiff relative to the OMC Debt.

62. At no time prior to Cobb having applied the excess funds towards the OMC Debt, was a garnishment order entered against Plaintiff relative to the OMC Debt.

63. Alternatively, upon information and belief, in or around July 2012, SCS applied the excess funds that Cobb had garnished from Plaintiff's wages towards another debt Plaintiff allegedly owed, i.e. the OMC Debt.

64. Alternatively, upon information and belief, in or around July 2012, SCS applied funds on Plaintiff's behalf towards the OMC Debt.

65. Plaintiff never provided SCS with her consent to have SCS apply the excess funds from the Chenal Debt towards the OMC Debt.

66. Plaintiff never provided SCS with her authority to have SCS apply the excess funds from the Chenal Debt towards the OMC Debt.

67. Alternatively, at no time prior to SCS having applied the excess funds from the Chenal Debt towards the OMC Debt did SCS ever inform Plaintiff she owed the OMC Debt.

68. Alternatively, at no time prior to SCS having applied the excess funds from the Chenal Debt towards the OMC Debt did SCS ever obtain permission from Plaintiff to apply the funds on her behalf towards the OMC Debt.

69. Alternatively, at no time prior to SCS having applied the excess funds from the Chenal Debt towards the OMC Debt did SCS ever obtain authorization from Plaintiff to apply the funds on her behalf towards the OMC Debt.

70. At no time prior to SCS having applied the excess funds towards the OMC Debt, was a lawsuit filed against Plaintiff relative to the OMC Debt.

71. At no time prior to SCS having applied the excess funds towards the OMC Debt, was a garnishment order entered against Plaintiff relative to the OMC Debt.

72. On or about August 2, 2012, Cobb sent Plaintiff a correspondence in an attempt to collect the OMC Debt.

73. The correspondence sent by Cobb to Plaintiff, dated August 2, 2012, stated "[t]hank you for your payment, however, this did not satisfy the balance owed on your account."

74. As delineated above, Plaintiff did not make a voluntary payment to Cobb relative to the OMC Debt.

75. Cobb's representation to Plaintiff, in the correspondence, dated August 2, 2012, that Plaintiff made a payment towards the OMC Debt was false, deceptive and/or misleading given that Plaintiff did not make a payment to Cobb towards the OMC Debt.

76. Cobb's representation to Plaintiff, in the correspondence, dated August 2, 2012, that Plaintiff made a payment towards the OMC Debt misrepresented the character, nature and/or legal status of the OMC Debt given that Plaintiff did not make a payment to Cobb towards the OMC Debt.

77. At the time Cobb represented Plaintiff made a payment towards the OMC Debt, Cobb was cognizant that Plaintiff had not made a voluntary payment to it towards the OMC Debt.

78. The correspondence sent by Cobb to Plaintiff, dated August 2, 2012, was Cobb's initial communication with Plaintiff relative to the OMC Debt.

79. Cobb has not provided to Plaintiff, within five (5) days of its initial communication to collect the OMC Debt, with written confirmation of the amount of the debt, the name of the creditor to whom the debt is allegedly owed or a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

80. On or about October 10, 2012, a lawsuit was filed against Plaintiff in the Sherwood District Court, State of Arkansas, captioned as *Open MRI of Conway, LLC v. Tina Stane*, with case number 2012 2308 (hereinafter, "the OMC Lawsuit").

81. The OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt.

82. Cobb represents Open MRI of Conway, LLC in the OMC Lawsuit.

83. Plaintiff incurred the OMC Debt prior to July 1, 2008.

84. Plaintiff's last date of voluntarily payment towards the OMC Debt was on or about July 1, 2008.

85. The last payment Plaintiff voluntarily made towards the OMC Debt was accepted by Open MRI of Conway, LLC on or about August 1, 2008.

86. Plaintiff has not made any voluntary payments towards the OMC Debt subsequent to August 1, 2008.

87. Subsequent to August 1, 2008, no third-party, has made a payment on Plaintiff's behalf, with Plaintiff's consent, relative to the OMC Debt.

88. Plaintiff has not made any voluntary partial payments towards the OMC Debt subsequent to July 1, 2008.

89. Subsequent to August 1, 2008, no third-party has made a partial payment on Plaintiff's behalf, with Plaintiff's consent, relative to the OMC Debt.

90. Subsequent to August 1, 2008, Plaintiff did not incur any additional medical bills from Open MRI of Conway, LLC.

91. Pursuant to Arkansas Code Annotated §16-56-106, the statute of limitations for medical debts in the State of Arkansas is the later of two (2) years from the date the services were performed or provided or from the date of the most recent partial payment for the services.

92. Upon information and belief, Cobb made a payment towards the OMC Debt on Plaintiff's behalf in an attempt to ensure that a lawsuit could be filed against Plaintiff relative to the OMC Debt without allowing Plaintiff to raise a statute of limitations defense pursuant to Arkansas Code Annotated §16-56-106.

93. Cobb's conduct in making a payment on Plaintiff's behalf, without her knowledge or consent, towards the OMC Debt thus allowing Cobb to proceed with filing a lawsuit against Plaintiff relative to the OMC Debt was an unfair and/or unconscionable method used by Cobb in an attempt to collect the OMC Debt from Plaintiff.

94. Alternatively, upon information and belief, SCS made a payment towards the OMC Debt on Plaintiff's behalf in an attempt to ensure that a lawsuit could be filed against Plaintiff relative to the OMC Debt without allowing Plaintiff to raise a statute of limitations defense pursuant to Arkansas Code Annotated §16-56-106.

95. Alternatively, SCS' conduct in making a payment on Plaintiff's behalf, without her knowledge or consent, towards the OMC Debt thus allowing a lawsuit to be filed against Plaintiff relative to the OMC Debt was an unfair and/or unconscionable method used by SCS in an attempt to collect the OMC Debt from Plaintiff.

96. At the time the OMC Lawsuit was filed against Plaintiff, Cobb attached to the OMC Lawsuit an Affidavit signed by a duly authorized representative of SCS.

97. At the time the OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt, more than two (2) years had passed since Plaintiff made a payment towards the OMC Debt.

98. At the time the OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt, more than two (2) years had passed since Plaintiff made a partial payment towards the OMC Debt.

99. At the time the OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt, more than two (2) years had passed since the date on which Open MRI of Conway, LLC, provided and/or performed services to Plaintiff.

100. At the time the OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt, more than two (2) years had passed since any third-party made a payment on Plaintiff's behalf, with Plaintiff's consent, towards the OMC Debt.

101. At the time the OMC Lawsuit was filed against Plaintiff in an attempt to collect the OMC Debt, more than two (2) years had passed since any third-party made a partial payment on Plaintiff's behalf, with Plaintiff's consent, towards the OMC Debt.

102. At the time the OMC Lawsuit was filed against Plaintiff, the statute of limitations relative to Cobb's attempt to collect the OMC Debt from Plaintiff had elapsed.

103. At the time the OMC Lawsuit was filed against Plaintiff, Cobb knew or reasonably should have known that the statute of limitations relative to the collection of the OMC Debt had elapsed.

104. Cobb's conduct in filing the OMC Lawsuit against Plaintiff in an attempt to collect the OMC Debt after the statute of limitations relative to the collection of the OMC Debt had elapsed was unfair and/or unconscionable.

105. By filing the OMC Lawsuit against Plaintiff, Cobb represented that it would prevail on the OMC Lawsuit despite the statute of limitations relative to the OMC Debt having passed.

106. At the time the OMC Lawsuit was filed against Plaintiff, Cobb alleged that Plaintiff refused to make a payment relative to the OMC Debt.

107. The representations made by Cobb as set forth in the OMC Lawsuit that Plaintiff refused to make a payment relative to the OMC Debt conflicted with the representations Cobb made to Plaintiff, on August 2, 2012, that Plaintiff putatively made a payment towards the account.

108. At the time the OMC Lawsuit was filed against Plaintiff, Cobb attached to the OMC Lawsuit a document sent from SCS to Open MRI of Conway, LLC, dated August 3, 2012.

109. The document sent from SCS to Open MRI of Conway, LLC, dated August 3, 2012, stated "[i]n our effort to collect the following account, we find it is necessary to recommend suit because the debtor will not voluntarily pay."

110. The document sent from SCS to Open MRI of Conway, LLC, dated August 3, 2012, referenced the OMC Debt as well as Plaintiff.

111. The representations made by SCS as set forth in the OMC Lawsuit that Plaintiff would not voluntarily pay the OMC Debt conflicted with the representations Cobb made to Plaintiff, on August 2, 2012, that Plaintiff putatively made a payment towards the account.

112. SCS's representations in the OMC Lawsuit that Plaintiff would not voluntarily pay the OMC Debt were false, deceptive and/or misleading given that on August 2, 2012, Cobb represented to Plaintiff that she had made a putative payment towards the OMC Debt.

113. Alternatively, Cobb's representations to Plaintiff, on August 2, 2012, that she had made a putative payment towards the OMC Debt were false, deceptive and/or misleading given that in the OMC Lawsuit SCS represented that Plaintiff would not voluntarily pay the OMC Debt.

114. On or about October 15, 2012, Plaintiff initiated a telephone call to SCS.

115. Plaintiff then engaged in a telephone conversation with an individual who identified herself as "Roberta C."

116. Upon information and belief, on or about October 15, 2012, "Roberta C." was a duly authorized representative of SCS.

117. Alternatively, upon information and belief, on or about October 15, 2012, "Roberta C." was a duly authorized representative of Cobb.

118. During the course of the aforesaid telephone conversation between Plaintiff and "Roberta C." Plaintiff was told that she made a payment on August 1, 2012, relative to the OMC Debt.

119. Plaintiff did not make a payment on August 1, 2012, relative to the OMC Debt.

120. During the course of the aforesaid telephone conversation, Plaintiff informed "Roberta C." that she did not make a payment on August 1, 2012, relative to the OMC Debt.

121. Plaintiff further stated that the last payment she had made towards the OMC Debt was in 2008.

122. "Roberta C." then proceeded to attempt to collect the OMC Debt from Plaintiff.

123. The aforesaid telephone conversation was SCS' initial communication with Plaintiff relative to the OMC Debt.

124. "Roberta C." further told Plaintiff that a lawsuit was going to be filed against Plaintiff relative to a different medical bill Plaintiff incurred in 2006 and that Plaintiff would have to pay that bill as well.

125. SCS has not provided to Plaintiff, within five (5) days of its initial communication to collect the OMC Debt, with written confirmation of the amount of the debt, the name of the creditor to whom the debt is allegedly owed or a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

126. SCS has not filed a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

127. Alternatively, Cobb has not filed a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

128. Upon information and belief, at the time of making the aforementioned threat, SCS had no intention of filing a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

129. Alternatively, upon information and belief, at the time of making the aforementioned threat, Cobb had no intention of filing a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

130. Upon information and belief, SCS has no authority to file a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

131. Alternatively, upon information and belief, Cobb has no authority to file a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

132. Upon information and belief, at the time of making the aforementioned threat, SCS had no authority to file a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

133. Alternatively, upon information and belief, at the time of making the aforementioned threat, Cobb had no authority to file a lawsuit against Plaintiff for a medical debt Plaintiff allegedly incurred in 2006.

134. Upon information and belief, at the time of making the aforementioned threat, SCS could not legally file a lawsuit against Plaintiff relative to a medical debt Plaintiff allegedly incurred in 2006 because the statute of limitations with respect to said debt passed.

135. Alternatively, upon information and belief, at the time of making the aforementioned threat, Cobb could not legally file a lawsuit against Plaintiff relative to a medical debt Plaintiff allegedly incurred in 2006 because the statute of limitations with respect to said debt passed.

136. On or about October 25, 2012, Cobb sent Plaintiff a correspondence in a further attempt to collect the OMC Debt.

137. In the correspondence, dated October 25, 2012, Cobb referenced the OMC Lawsuit.

138. In the correspondence, dated October 25, 2012, Cobb informed Plaintiff regarding the date on which a trial was scheduled in the OMC Lawsuit.

139. In the correspondence, dated October 25, 2012, Cobb stated "[i]f you would like to discuss or settle this case please call me or pay in full before [the above] court date."

140. In the correspondence, dated October 25, 2012, Cobb did not inform Plaintiff that it was a debt collector, attempting to collect a debt, and that any information obtained would be used for that purpose.

## COUNT I:
## TINA STANE v. SOUTHERN SERVICE SYSTEMS, INC., d/b/a SOUTHERN COLLECTION SYSTEM

141. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

142. In its attempts to collect the debts Plaintiff allegedly owed, SCS violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

   c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   d. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

   e. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

   f. Failed to comply with the provisions of 15 U.S.C. §1692g(a);

   g. Applying payments made by a consumer to a debt which is disputed by a consumer or applying payments made by a consumer in a manner that is not in accordance with the consumer's directions in violation of 15 U.S.C. §1692h; and,

   h. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

143. As a result of SCS's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, TINA STANE, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, SOUTHERN SERVICE SYSTEMS, INC., d/b/a SOUTHERN COLLECTION SYSTEM, as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00;

    c. Plaintiff's attorneys' fees and costs; and,

    d. Any other relief deemed appropriate by this Honorable Court.

### COUNT II:
### TINA STANE v. STEPHEN COBB

144. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

145. In its attempts to collect the debts Plaintiff allegedly owed, Cobb violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

    d. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    e. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

  f. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

  g. Collected funds from Plaintiff despite having no lawful authority to do so in violation of 15 U.S.C. §1692f(1);

  h. Failed to comply with the provisions of 15 U.S.C. §1692g(a);

  i. Applying payments made by a consumer to a debt which is disputed by a consumer or applying payments made by a consumer in a manner that is not in accordance with the consumer's directions in violation of 15 U.S.C. §1692h; and,

  j. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

146. As a result of Cobb's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, TINA STANE, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, STEPHEN COBB, as follows:

  a. All actual compensatory damages suffered;

  b. Statutory damages of $1,000.00;

  c. Plaintiff's attorneys' fees and costs; and,

  d. Any other relief deemed appropriate by this Honorable Court.

### V.  Jury Demand

147. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,<br>
**TINA STAND**<br>
By: _____<br>
David M. Marco<br>
Attorney for Plaintiff

Dated: January 9, 2013

David M. Marco (Atty. No.: 6273315)
SMITHMARCO, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com